United States District Court
District of Massachusetts

| | |
|---|---|
| Jorge Quintanilla,          ) | |
| )  | |
| Petitioner,          ) | |
| )  | |
| v.          ) | Civil Action No. |
| )  | 19-11052-NMG |
| Superintendent, NCII Gardner,          ) | |
| )  | |
| Respondent.          ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

In December, 2008, a Middlesex County grand jury indicted Jorge Quintanilla ("petitioner" or "Quintanilla") on four counts of statutory rape (Counts 1-4), four counts of rape (Counts 5-8), three counts of assault and battery by means of a dangerous weapon (Counts 9-11) and one count of assault and battery (Count 12). A jury trial was conducted in January, 2010, in Middlesex County Superior Court ("the Trial Court") during which Quintanilla was represented by Attorney Robert Carmel-Montes ("trial counsel"). Quintanilla was ultimately convicted of all but two charges (one count of statutory rape and one count of adult rape).

-1-

Presently before the Court is a petition for writ of habeas corpus filed by Quintanilla pursuant to 28 U.S.C. § 2254. Petitioner rests his claim for relief on a violation of his Sixth Amendment right to effective assistance of counsel.

## I. Background

### A. Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). The Court therefore looks to the facts found by the Trial Court as summarized on appeal by the Massachusetts Appeals Court ("the Appeals Court"):

> The victim was born in El Salvador on March 25, 1990, and immigrated to the United States in 2003. Shortly thereafter, she met [petitioner] at a nightclub. She was still thirteen years old when he raped her in her half-sister's home, where she was then living. Her half-sister arrived home and found [petitioner] with the victim. Thereafter, members of the victim's and [petitioner's] families assembled and decided that she would move to [petitioner's] family home to live with [petitioner].
>
> Over the next four years, the victim was a virtual prisoner in [petitioner's] home. [Petitioner] raped her vaginally, anally and orally on a weekly basis and beat her regularly. She was allowed to leave the house to do chores or run errands for [petitioner], but only with permission. She would regularly be given permission to go to the laundromat, grocery store, and liquor store, and to walk the family dog

in a park next to the home. She also attended parties, particularly to watch [petitioner] and his band play.

The defense at trial was that the victim had fabricated the allegations and that the police did not thoroughly investigate the victim's allegations, choosing instead to simply credit her. In furtherance of that strategy, trial counsel elicited testimony showing that the victim's allegations had evolved over time from allegations of physical abuse to allegations of sexual abuse to gang rape and witchcraft. Trial counsel elicited testimony from Officer Michael Mulcahy ["Officer Mulcahy"], the lead police investigator, that the victim first reported only that [petitioner] physically abused her and only sought an abuse prevention order, which was admitted in evidence. [Officer] Mulcahy confirmed that the victim did not suggest sexual abuse until almost five months later, in connection with her Sexual Assault Investigative Network (SAIN) interview where she first described the sexual abuse and further alleged that [petitioner] and his mother were involved in witchcraft. The SAIN interview was admitted into evidence. Trial counsel confirmed with the trial judge that admitting the SAIN interview was part of his strategy.

To support his theory that the police investigation was lackluster, trial counsel had [Officer] Mulcahy confirm that, in his initial police report, he included the statement that the defendant was a "known admitted [gang] member," which was information provided by the victim and not independently confirmed through an investigation by him or his fellow officers. The report was admitted. [Officer] Mulcahy also confirmed that the victim was the sole source of information about her date of birth. As trial counsel cross-examined Officer Mulcahy regarding the police report, the trial judge warned him that he was "open[ing] the door," and that the Commonwealth would be allowed to "kick it open," to which he replied, "I understand."

Trial counsel also permitted the victim to testify to the witchcraft allegations ostensibly to demonstrate the incredulous nature of her allegations. Similarly, he allowed the victim to testify that the defendant's mother injected her with birth control from El Salvador, and that the injections once caused her to lose consciousness; when she woke up she was naked with a man on top of her and surrounded by nude men who were exchanging money with the defendant.

-3-

> Trial counsel's approach to [the testimony of] Elida Flores ["Flores"] . . . and Beatrice Morales ["Morales"], who helped take the victim to a women's shelter after she escaped from the defendant's home, was similar. He elicited hearsay testimony concerning the victim's allegations from an initial claim of physical abuse alone to later allegations of sexual assaults by the defendant, allegations against the defendant's mother and brother, and gang rape. When asked by the trial judge whether he was making a "tactical, strategic decision ... with [his] client's consent," trial counsel responded, "[a]bsolutely."
>
> The defendant's mother informed trial counsel that certain family members could provide testimony contradicting parts of the victim's testimony. Explaining to the trial judge that he was on a "short leash," trial counsel stated that he would make a "very last minute decision to decide whether or not we could at least try to put these people in." Ultimately, he declined to present any defense witnesses.

<u>Commonwealth</u> v. <u>Quintanilla</u>, 92 Mass. App. Ct. 1129, 2018 WL 1040522, at *1. (footnotes omitted).

### B. Procedural History

Quintanilla was sentenced, following a sentence appeal in the Appellate Division of the Massachusetts Superior Court, to 25 years on Count 1, life imprisonment on Count 2 and various terms of imprisonment on Counts 5, 7, 10 and 11, all to run concurrently.

He timely appealed his conviction to the Appeals Court in June, 2010. In November, 2010, the Appeals Court stayed the proceedings pending the outcome of petitioner's motion for a new

trial.  In that motion, Quintanilla argued trial counsel was ineffective because

> (1) he elicited and permitted the admission of highly prejudicial hearsay evidence from [Officer] Mulcahy, Flores, and Morales; (2) he failed to introduce typewritten pharmacy records on which the victim's birth year is stated to be 1987—three years earlier than the date to which she testified; and (3) he failed to introduce witnesses who would have testified that the victim was not a prisoner in the family home and appeared happy in her relationship with the defendant.

Quintanilla, 2018 WL 1040522, at *2.

In August, 2012, the Trial Court denied Quintanilla's motion for a new trial without an evidentiary hearing.  The Appeals Court vacated that denial in October, 2013, and remanded the matter for an evidentiary hearing.

On remand, the Trial Court held a four-day evidentiary hearing, at which,

> the defendant called several witnesses in support of his motion. The witnesses were primarily friends, family, and acquaintances of both the defendant and the victim. In sum, the witnesses testified that the victim was treated like a member of the family, was free to leave the home as she pleased, and appeared to be happy in her relationship with the defendant. Each witness also stated that they had not been contacted by trial counsel and would have been willing to testify if asked. The defendant's mother did not testify.
>
> The defendant called a training director at the Committee for Public Counsel Services (CPCS), who opined that trial counsel's performance was

-5-

> ineffective because he elicited prejudicial testimony
> from [Officer] Mulcahy, allowed admission of the SAIN
> interview, and failed to personally interview
> witnesses who could have contradicted some of the
> victim's testimony about her relationship with the
> defendant and his family. She acknowledged, however,
> that his strategy of eliciting inconsistent statements
> and exposing the victim's evolving narrative in an
> effort to undermine her credibility was not
> unreasonable.

Quintanilla, 2018 WL 1040522, at *2 (footnotes omitted).

The Trial Court denied the motion for a new trial in December, 2014, holding that although certain of trial counsel's errors "fell below the conduct of the ordinary fallible attorney", defendant was not prejudiced by such conduct. Id. Quintanilla appealed in January, 2015, and in February, 2018, the Appeals Court affirmed. In May, 2018, the Massachusetts Supreme Judicial Court denied Quintanilla's application for further appellate review.

In May, 2019, Quintanilla filed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. Quintanilla is currently in state custody, serving his sentence at North Central Correctional Institute located in Gardner, Massachusetts.

## II. Analysis

### A. Legal Standard

To secure federal habeas relief in the wake of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must demonstrate that the "last reasoned state court decision" in the case

> resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Janosky v. St. Amand, 594 F.3d 39, 47 (1st Cir. 2010) ("Because the [Supreme Judicial Court] summarily denied further appellate review, we look to the last reasoned state-court decision — in this case, the [Massachusetts Appeals Court's] rescript."). Here, the last reasoned decision of a state court is the decision of the Appeals Court affirming the Trial Court's denial of Quintanilla's motion for a new trial. See Janosky, 594 F.3d at 47.

The United States Supreme Court has stated that the "contrary to" and "unreasonable application" clauses of § 2254 have "independent meaning" thus providing two different avenues for a petitioner to obtain relief. Williams v. Taylor, 529 U.S.

362, 405 (2000). A state court's adjudication will be "contrary to" clearly established Supreme Court precedent if it either "applies a rule that contradicts the governing law set forth" by the Supreme Court or considers facts that are "materially indistinguishable" from a Supreme Court decision and arrives at a different conclusion. Id. at 405-06.

On the other hand, a state court's decision will constitute an "unreasonable application" of clearly established Supreme Court precedent if it "identifies the correct governing legal principle" from the Supreme Court but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Consequently, a federal habeas court may not grant relief simply because that court concludes in its independent judgment that the decision of the state court applied clearly established federal law erroneously or incorrectly. Id. at 411. It must further conclude that such an application was unreasonable. Id.

Further, factual determinations made by a state court "shall be presumed to be correct" unless the petitioner can rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

It is well settled that the rule set forth in Strickland v. Washington, 466 U.S. 668 (1984) establishing the standard for

claims of ineffective assistance of counsel is "clearly established" Supreme Court precedent. See, e.g., Williams, 529 U.S. at 391. Strickland provides that a petitioner alleging ineffective assistance of counsel must demonstrate that 1) "counsel's performance was deficient" such that the errors committed were "so serious that counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment" and 2) counsel's "deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. Prejudice requires a determination that counsel's errors "deprive[d] the defendant of a fair trial. . . whose result is reliable." Id. at 687. In other words, there must be a substantial rather than merely conceivable "reasonable like[lihood] that the result of the criminal proceeding would have been different." Hensley v. Roden, 755 F.3d 724, 736 (1st Cir. 2014).

Generally, courts reviewing the actions of counsel under Strickland "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable[ness]". Strickland, 668 U.S. at 689. Where, as here, the petitioner's claim was adjudicated on the merits by a state court, the petitioner faces the "doubly heavy burden" of overcoming the

presumption of Strickland and the deference owed to the state court. Yeboah-Sefah v. Ficco, 556 F.3d 53, 70 (1st Cir. 2009).

**B.   Application**

   **1. Whether the State Court**

   **Decision Was Contrary To Strickland**

Quintanilla submits that the Appeals Court's decision is "contrary to" Federal law because the Appeals Court applied the Massachusetts standard for ineffective assistance of counsel as provided in Commonwealth v. Saferian, 366 Mass. 89, 96 (1974) rather than the federal standard provided in Strickland.  The Commonwealth responds that there is no meaningful difference between the standards.

As held repeatedly by the First Circuit, "the Massachusetts and federal standards for ineffective assistance claims are equivalent." Neverson v. Bissonnette, 242 F. Supp. 2d 78, 89 (D. Mass. 2003); see also Stephens v. Hall, 294 F.3d 210, 214-15 (1st Cir. 2002) ("We have concluded elsewhere that [t]he standard for ineffective assistance under Massachusetts law appears functionally equivalent to the federal standard." (quoting Phoenix v. Matesanz, 189 F.3d 20, 27 n. 4 (1st Cir. 1999)).  As a result, the Appeals Court's citation to Safferian

rather than Strickland does not render its decision "contrary to" Federal law.

### 2. Unreasonable Application of Strickland

Quintanilla submits that the decision of the Appeals Court reflects an unreasonable application of Strickland given counsel's "numerous and egregious failures", specifically his failure: 1) to introduce pharmacy records that would have demonstrated the victim was not a "child"; 2) to object to the introduction of irrelevant, inadmissible and prejudicial evidence; and 3) to contact and interview other defense witnesses.

Quintanilla first submits that trial counsel was in possession of, but did not submit into evidence, pharmacy records that proved the victim was over the age of consent which would have provided a complete defense for the charges of child rape. At the evidentiary hearing, however, the Trial Court made a factual finding that trial counsel did not have access to the pharmacy records and possessed only handwritten medical records which did not contradict the victim's claimed age. Quintanilla, 2018 WL 1040522, at *4. The Appeals Court affirmed this finding. Id.

Quintanilla proffers no "clear and convincing evidence" to rebut that finding. See 28 U.S.C. § 2254(e)(1). Accordingly, the Court presumes that trial counsel did not possess the relevant records and, as a result, cannot be deemed deficient for failing to introduce records he did not possess. See Yeboah-Sefah, 556 F.3d at 70 ("[A] lawyer's acts and omissions must be judged on the basis of what he knew, or should have known, at the time his tactical choices were made and implemented.").

Quintanilla next submits that trial counsel was ineffective for eliciting unduly prejudicial and inadmissible testimony during the cross-examination of Officer Mulcahy. Petitioner specifically faults trial counsel for his line of questioning that elicited multiple hearsay statements without objection and allowed the Commonwealth to introduce in its entirety a video of a Sexual Abuse Intervention Network ("SAIN") interview, during which the victim recounted charged and uncharged bad acts without confrontation. Among the elicited statements were uncharged allegations of gang rape, rape by Quintanilla's brother, witchcraft and drugging by Quintanilla's mother. Trial counsel also elicited statements revealing that the victim previously obtained a restraining order against Quintanilla.

The Appeals Court credited trial counsel's repeated statements to the Trial Judge that his decision to elicit otherwise prejudicial and inadmissible testimony was part of his strategy to attack the victim's credibility by suggesting that 1) her claims were fabricated because they mutated overtime from physical abuse to sexual assault; 2) she was motivated to lie and rewarded for doing so by obtaining a U-visa; and 3) she was a jealous spouse. The Appeals Court further accepted trial counsel's statements that he sought to emphasize that the investigating officers engaged in "shoddy" police work by failing to investigate allegations of gang activity and rushing to judgment by helping the victim obtain a restraining order without corroborating her claims.

Petitioner contends that the Appeals Courts' decision was unreasonable because trial counsel never stated that the admission of the SAIN video was the result of a strategic decision and even objected to the playing of the video for the jury. Such conduct, according to Quintanilla, highlights a stark "inconsisten[cy] with how counsel actually proceeded" in comparison with counsel's stated strategy. See Dugas v. Coplan, 428 F.3d 317, 333 (1st Cir. 2005) (finding that state court's conclusion that defense counsel's decision not to engage an arson expert was an unreasonable application of Strickland on

account that defense counsel then proceeded to pursue a strategy that no arson occurred). The Commonwealth responds that the SAIN video revealed a major inconsistency in the victim's testimony, thus bolstering trial counsel's overall strategy.

The Trial Judge expressly warned trial counsel that if he asked Officer Mulcahy about the content of the victim's statement in the SAIN video, he was opening the door for the admission of the video. Despite that warning, trial counsel proceeded to inquire about the content of the video, seeking to reveal inconsistencies between the victim's statements in the video and her testimony at trial. Trial Counsel did not object to the admission of the SAIN interview as an exhibit but did object to it being played to the jury without its specific request to do so. Though potentially misguided, the Appeals Court was not unreasonable in its determination that the admission of the SAIN video was the product of reasoned strategy.

Quintanilla's last and strongest argument in favor of ineffective assistance is the failure of trial counsel to contact and interview witnesses who maintained a relationship with Quintanilla and who would have provided testimony in support of his defense. The Appeals Court found that

> [w]here the defendant's defense depended on
> undermining the credibility of the victim, it was
> manifestly unreasonable for trial counsel to rely
> entirely on the defendant's mother to determine
> whether to call any . . . witnesses.

This Court agrees. Trial counsel failed to conduct any independent investigation as to whether to call witnesses who may have cast doubt on the victim's credibility. Such conduct amounts to deficient performance sufficient to satisfy the first prong of Strickland.

With respect to the prejudice prong of Strickland, the Appeals Court held that Quintanilla was not prejudiced by trial counsel's actions because the additional witnesses would have provided only cumulative testimony that the victim "went to the park, ran errands . . . attended family parties" and was generally treated well by Quintanilla's family. As emphasized by the Appeals Court, the victim herself testified to each of those liberties.

Quintanilla does not contend that the witnesses would have proffered any evidence other than impeachment evidence, the omission of which does not ordinarily form the basis of a new trial. See Commonwealth v. Almeida, 897 N.E.2d 14, 27 (Mass. 2008). Although impeachment evidence may, in some cases, "make the difference between conviction

-15-

and acquittal", Quintanilla fails to demonstrate a reasonable likelihood that the omitted impeachment evidence would have changed the outcome in this case. See United States v. Bagley, 473 U.S. 667, 676 (1985). Indeed, the Trial Court had the opportunity to assess the omitted testimony at the evidentiary hearing and deemed the witnesses not credible. The presumption of correctness this Court affords the state courts' findings of fact extends to credibility determinations. See Thompson v. Keohane, 516 U.S. 99, 111 (1995) (noting trial court's superior ability to appraise witness credibility and demeanor and therefore accords the jurist-observer presumptive weight); Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007) (holding that ruling on a state habeas petition requires deference to the state court's fact-finding, which includes witness credibility).

Presuming then, as this Court must absent clear and convincing evidence to the contrary, that the witnesses would not have provided credible testimony and any testimony they would have provided served only to impeach the victim, it was not unreasonable for the Appeals Court to determine that trial counsel's deficient performance did not prejudice Quintanilla.

Finally, consideration of the cumulative effect of trial counsel's conduct similarly does not result in ineffective assistance. See Dugas, 428 F.3d at 335; see also Harrington v. Richter, 562 U.S. 86, 111 (2011) (noting that it can be difficult to establish ineffective assistance of counsel when counsel's overall performance is satisfactory). As found by the Trial Court and accepted by the Appeals Court, the overall performance of counsel was satisfactory such that the cumulative effect of the complained of conduct does not establish deficient performance that prejudiced Quintanilla.

### 3. Reasonableness of the Appeals Court's Determination of the Facts in Light of the Evidence Presented

Quintanilla separately contends that the Appeals Court's denial of his motion for a new trial based on ineffective assistance of counsel resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.

W]hen a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, a federal court may overturn the state court's decision only if it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Burt v. Titlow, 571 U.S. 12, 18 (2013) (quoting 28

U.S.C. § 2254(d)(2)). The factual findings of the state court "are presumed to be correct unless the petitioner rebuts the presumption with clear and convincing evidence." Companonio v. O'Brien, 672 F.3d 101, 109 (1st Cir. 2012).

Quintanilla maintains that the holding of the Appeals Court that counsel's actions were part of broader strategic decision-making process was an unreasonable determination of the facts. In opposition, the Commonwealth asserts that petitioner has failed to rebut the presumption of correctness with clear and convincing evidence.

Quintanilla has failed to demonstrate that the decision of the Trial Court, as endorsed by the Appeals Court, was "devoid of record support" and objectively unreasonable. See id. at 109. Indeed, the Trial Judge expressed concern on several occasions with trial counsel's conduct and confirmed with him on multiple occasions that certain actions were the product of strategic consideration. The Trial Judge ultimately concluded that trial counsel's actions, though potentially ill-advised, were not objectively unreasonable such that "no competent attorney would have acted as [trial counsel] did". Wright v. Marshall, 656 F.3d 102, 108 (1st Cir. 2011). Such a conclusion is reasonable and entitled to the substantial deference a federal habeas court

affords the factual determinations of a state court. Companonio, 672 F.3d at 109.

III. **Certificate of Appealability**

Although the Court has concluded that trial counsel's conduct did not amount to constitutionally ineffective assistance, that conclusion is one that reasonable jurists could debate. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). Pursuant to 28 U.S.C. § 2253(c) a certificate of appealability may issue "if the applicant has made a substantial showing of the denial of a constitutional right" such that,

> reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

Slack, 529 U.S. at 484.

Throughout the state court proceedings, the Trial Judge made several comments regarding trial counsel's strategic choices, such as:

> I have more of a memory of this case than others, because I've never – happily – had to have so many questions concerning the tactical strategic decision after consulting with your client and other behaviors that all of – most of which have been noted on the record.

Similarly, the expert witness at the subsequent evidentiary hearing noted,

>     you couldn't go many pages [in the transcript] without
>     finding something that [trial counsel] had done that
>     was incompetent.

The expert even went so far as to consider reporting trial counsel to the Massachusetts Board of Bar Overseers.

Accordingly, the Court will exercise its discretion sua sponte to grant Quintanilla a certificate of appealability. See, e.g., Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007) (affirming district court's sua sponte grant of a COA); see also United States v. Puello, No. 07-10134, 2010 WL 5376735, *1 (D. Mass. Dec. 21, 2010) (denying, in part, and allowing, in part, a COA sua sponte).

### ORDER

For the foregoing reasons, the petition for writ of habeas corpus of Jorge Quintanilla (Docket No. 1) is **DISMISSED** but the Court sua sponte enters a certificate of appealability with respect to such dismissal.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated March 9, 2020